NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TIMOTHY WAYNE CLARK, *Appellant.*

No. 1 CA-CR 20-0482
FILED 7-27-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201900080
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Law Office of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

**¶1** This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Timothy Clark has advised this court that she has found no arguable questions of law and asks us to search the record for reversible fundamental error. A jury convicted Clark of one count of aggravated assault by domestic violence, a class 4 felony, and the superior court suspended his sentence and placed him on 3 years' probation, including 120 days in jail with credit for one day served and eligible for work release. He was given an opportunity to file a supplemental brief *in propria persona*; he has not done so. After reviewing the record, we affirm Clark's conviction and the consequences imposed.

### FACTS AND PROCEDURAL HISTORY

**¶2** We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Clark. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998). In December 2018, J.W.[1] traveled to the Tri-State Inn in Kingman, Arizona to visit Clark, with whom she had been in a relationship for six months. J.W. had been very sick with a high fever, body aches, and other flu-like symptoms and had mostly slept during her first two days in Kingman.

**¶3** On the morning of the third day, Clark woke J.W. and told her that things were not working out. J.W. interrupted Clark and told him that she needed to go to the hospital. He then rolled on top of her and choked her to the point that she could not breathe. J.W. squirmed and tried to get away but could not until Clark released her. The couple continued to argue, and Clark picked up J.W. and slammed her against his knee, also hitting

---

[1] In the interest of privacy for the victim and other witnesses not involved in the alleged crime, abbreviations are used.

her in the face in the process. J.W. called 911 and Clark went to the room next door where his brother had been staying.

¶4        While J.W. was packing her things, Clark returned to the room. J.W. told him to leave the room and called 911 a second time. Clark attempted to leave the Inn, but a Kingman police officer stopped him at the parking lot exit. Clark told the officer that J.W. had fought him when he told her it was not working out between the two of them and that he had held her down with his hands, motioning to his upper clavicle.

¶5        When the officer interviewed J.W., she appeared stunned. She was holding her ribcage and had abrasions on her neck and a bruise beginning to form on her right cheek bone. She told the officer that Clark had snapped when she told him that she needed to go to the hospital. Clark was arrested and charged with aggravated assault by domestic violence and disorderly conduct by domestic violence, the latter of which was dismissed with prejudice before trial.

¶6        In a pretrial hearing, Clark objected to the use of Zoom and other videoconferencing methods. In July of 2020, the superior court held an evidentiary hearing on the issue and denied Clark's motion. Both this court and our supreme court declined jurisdiction in special action review.

¶7        After resolution of the special actions, a two-day jury trial was held. Clark, the attorneys, the witnesses, the superior court judge, and court personnel were physically present in the courtroom. During jury selection, twenty-nine prospective jurors were present, twelve of which appeared by video through Zoom. During trial, all participants including jurors were physically present in the courtroom. At the close of the State's case in chief, Clark unsuccessfully moved for a judgment of acquittal. The defense presented Clark's brother as its sole witness and then rested.

¶8        The superior court heard argument whether it should give a flight or concealment jury instruction requested by the State. The court found that because Clark returned to the room a second time and left after J.W. told him she was calling the police again, a jury could infer from the facts that the defendant left the scene in a manner to avoid law enforcement officials. The court gave a modified instruction, explaining that in determining if the State met its burden, the jury "may consider any evidence of the defendant's running away, together with all the other evidence in the case. Running away after a crime has been committed does not by itself prove guilt."

3

**¶9**         The jury found Clark guilty of aggravated assault by domestic violence. The superior court suspended the imposition of sentence and placed Clark on three years of probation. It also required Clark to serve 120 days of jail time with work release eligibility. Clark timely appealed.

## DISCUSSION

**¶10**         We have reviewed the record for reversible fundamental error and find none. *See Leon*, 104 Ariz. at 300; *see also State v. Smith*, 171 Ariz. 501 (App. 1992). The record reflects that the superior court afforded Clark all his constitutional and statutory rights, and that the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Clark was represented by counsel at all critical stages of the proceedings against him. No jury instruction was given in error or prejudiced Clark. The sentence imposed was within the statutory guidelines. We affirm Clark's conviction and sentence.

## CONCLUSION

**¶11**         For the foregoing reasons, we affirm Clark's conviction and the consequences imposed. After the filing of this decision, defense counsel shall inform Clark of the status of this appeal and his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). On this court's own motion, Clark has 30 days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA